19-10532, Williams v. Waste Management Mr. O'Kane? Yes, Your Honor. May it please the Court, my name is Rusty O'Kane. Along with my co-counsel, Mr. Eric Shalalashvili, we represent the appellant, Andre Williams. This entire case comes down to whether Waste Management's stated reason for terminating Williams' employment was a pretext for discrimination. One of the key issues here is that the trial court failed to draw reasonable inferences and resolve all fact disputes in Williams' favor. In response to Mr. Williams' prima facie evidence of discrimination, Waste Management offered a plausible, non-discriminatory explanation for that termination, saying that he failed to show up for three consecutive days. And those days were, what are the specific days? July 20th, 21st, and 22nd. Williams, however, came forward with enough evidence to cast doubt on that explanation, which is all that's needed for a reasonable jury to conclude that the explanation was false and that the decision to fire Williams was already made before the purported no-show. As a result, summary judgment was inappropriate. We need to slow down, counsel. Summary judgment was inappropriate, and Williams is entitled to have his case heard before a jury. Under the familiar McDonnell-Douglas framework, Williams presented a prima facie case of age discrimination. In fact, the magistrate judge and the district court judge specifically assumed for purposes of deciding the summary judgment motion that he made that finding. Even here, Appleby pays lip service and a footnote saying that they dispute it, but there's no genuine issue that he made a prima facie case of age discrimination. We know that he was over 50 years old. He was discharged on July 25th. He was qualified for his job. As I understand, I don't mean to interrupt you, I just want to make sure we get to the issue of pretext. The factual dispute you are pointing to, correct me if I'm wrong, has to do with Williams showing up for work or not on Monday, July the 22nd. That's correct, Your Honor. Is that right? Describe for me, I mean, what is the nature of that dispute? Three significant issues. First, that in his summary judgment motion, Andre Williams presented what's called a Kronos form. It's a form pursuant to waste management's policy that says if you're unable to, for whatever reason, clock in, and you don't demonstrate that you clock in to begin your shift, you fill out this form, you turn it in, and that demonstrates that you were present. Mr. Williams presented that form in his summary judgment response. Specifically, in response to the argument from waste management that Mr. Williams did not show up, he argued first, he testified that he showed up, and he put that in his brief. He also attached a copy of that Kronos form which said specifically that on July 22nd he was present at 4.30 a.m. for his scheduled shift start. So by demonstrating that the basis for waste management's termination was false, a reasonable jury could infer that... Well, but he didn't come back on the next two days either. I mean, explain how that is justified by the fact that he thinks they weren't there to see him on the morning of the 22nd. I think, as I recall, there were communications with him to come in, to come in by a certain date. They even gave him a week more to come in. That's right, Your Honor. Link those two together. Absolutely, and it comes down to waste management's stated policy. Their policy is that for three consecutive days, it's an automatic termination, and it's an objective standard based on their handbook. They emailed him on July 18th and said, we expect you to be here on July 22nd. You're right, he did not show up for work on the 20th or the 21st, but the stated basis for termination was that he failed to show up for the third consecutive day, and that day happens to be July 22nd. So by coming forward with evidence that the legitimate, plausible basis for termination, the three consecutive no-call no-shows, was incorrect by presenting both the form, the Kronos form, which again is pursuant to their policy, as well as testifying that he spoke to someone who said that his direct supervisor, Mark Johnson, wouldn't come out to see him. So there is enough evidence in the record, which he presented, to show that waste management fabricated this abandoned job, he didn't show up. The evidence in the record is clear that Mr. Williams testified that he spoke to somebody. He presented this form. He said your waste management's reason, no-call no-show, is inaccurate. Now on appeal, waste management's come forward with a new explanation. They say, well, okay, even if we don't, even if he did show up, we believed he didn't show up, and that belief is a legitimate, plausible, non-discriminatory basis. The problem with that is they didn't make the argument below. That's a new litigation figment that they came up with on appeal. Mr. Williams didn't have the opportunity to develop the record below on that point, and we welcome that fight. If the court remands for a determination on the issue of age discrimination, let Mr. Williams go take a deposition and find out what they believed. But the reality is that what they did— Let me see if I understand. You're arguing that the waste management's argument that even assuming he showed up on the 22nd and did everything he was supposed to, well, they may have been incorrect about that, but they still had a genuine belief, it wasn't pretextual, a genuine belief that he didn't fulfill the three-day no-show policy, and so there's no evidence of a pretext. You're saying they did not make that argument below. That's correct. Okay. They did not, and even if they did, and, Your Honor, they did not, but even on appeal, as we look at this de novo, the fact is that that now incorrect belief statement is a shifting explanation. And this court's jurisprudence talks specifically about how shifting explanations constitute grounds to defeat summary judgment. So here we have their first basis, which is he did not show up. Well, there's evidence in the record, and it's at ROA 1308 and 1405, which is the evidence of his Cronus form, where he says that basis is inaccurate. Well, then they shift their explanation, and they come forward and say, well, here's the incorrect belief. That shifting explanation, again, and I would point the court to the Burrell case at 482 F3-408, that an employer's inconsistent explanations for its employment decisions at different times permits a jury to infer that the employer's proffered reasons are pretextual. I would also point the court to the Burton case. Well, do you still, even if there's that, does there still have to be enough relevant evidence to permit a trier of fact to conclude that the real reason was age under the age discrimination? Do you still have to have that evidence to survive summary judgment? Yes, and here I think there is that evidence. What is that? So Mr. Williams came forward, and it's partially part of his prima facie evidence, which is there were three comments made related to his age, specific age-related comments where his direct supervisor, Mark Johnson, is alleged to have said that if you are too old to do your job, and just briefly, you may recall that this relates to Mr. Williams had taken some sleep medication and he had asked to come in at 6 a.m., not 4.30. During the course of that discussion, his direct supervisor is alleged to have said, if you're too old to do your job and to work these hours, maybe you should look at a new line of work. Was Johnson the decision-maker? Johnson was not the decision-maker. However, there is case law that says that the comments were made, let me back up, there's evidence that the second and third comments about his age were made in the presence of Ramirez, who was the regional HR director, who does make the decision on termination. There's case law that says, and we cited it in the brief, that if the decision-maker, if there's a proximity to the decision-maker, that those age-related comments can influence the decision-maker, and that, again, is sufficient to overcome summary judgment. Did Maria Ramirez say that she relied on Johnson to know that there were three consecutive days? No. In fact, Ramirez specifically says that, again, denies that the comments were made. No, not on the ageist comments, on the no-show consecutive days. I thought there was the statement that she said, I relied on Johnson to know whether he showed up or not. Well, by definition, as the HR manager, she has to rely on, and I think Ramirez is a man, I think it's Louis Ramirez, that they have to rely on supervisors because this supervisor, Mark Johnson, was the one who oversaw Williams' work. So I don't know specifically where in the record Ramirez testified to that, but it would make logical sense that Ramirez is going to rely on a supervisor who's going to report and say, Mr. Williams didn't show up for work. But you're not urging a cat's paw theory. You're just saying that she relied on him, not that he influenced her. No. We are alleging a cat's paw theory and saying that the comments were made both in proximity to his determination. So, for example, all of the comments were alleged to have made in July of 2013. He was terminated in July of 2013. They were made in reference to, so they used Mr. Johnson with this age discrimination commentary, made in the presence of Ramirez at least once, and then two weeks later, the meeting was on July 11th where Ramirez is alleged to have heard the comments made by Johnson, and then on July 25th he's terminated. And the problem is that these comments were made which demonstrate the animus for the age discrimination, and they raise a genuine issue of material fact on whether or not the comments were made, whether they influenced and were pretextual on the termination, and Mr. Williams did enough below to overcome summary judgment on those points. He showed the three comments, the age-related animus. He showed that the basis for their termination was false. And we're not, by the way, we're not asking the court to find that their basis was false. We don't have to go that far here. All we're asking is that Mr. Williams came forward with enough for a jury to infer that their basis for termination was false. That's why summary judgment was inappropriate here, because Mr. Williams said, here's a form showing that your basis for terminating me was wrong. I did show up. And again, they never raised the issue of the incorrect belief, but again, even if they did, that's where the shifting explanation comes in and allows a reasonable jury to infer that their shifting explanation on that point is pretextual. Waste management said in their opposition brief you've waived the dismissal of the race and retaliation claims. Do you accept that? That we've waived, I'm sorry? That you waived appeal of the dismissal of the race and retaliation claims. I don't believe we've waived it, no. And, in fact, I think we specifically put in our brief that we do have, there is evidence of, for example, Mr. Williams did testify that certain comments were made related to his race and with respect to disability. Sleep is a recognized condition. He testified that he was diagnosed with post-traumatic stress disorder, and he testified that in his, and it's in the record, in his EEOC charge, that the company regarded him as disabled. I would rely on our briefs on that. I thought in the EEOC he specifically said he was fit to work. The sleeping problems weren't there. Well, what he said was, he checked the box that says no disability. He is a little inconsistent on that point. He does say no disability, but then in the next line on the EEOC charge he says, but they've regarded me as disabled, and I think that the fact that he had a diagnosed sleep post-traumatic stress, which had ramifications on his sleep, qualifies as a disability under the ADA. But he does continually want to say, and does say below, I can work. I can do my job. I'm simply asking to start at 6 a.m. rather than 4.30. And so with respect, I don't believe it's waived. Well, in your EEO claim you did not raise Title VII, and yet you've got it, you've raised it, and I just don't understand that you're appealing Title VII because you didn't raise it in the EEO, and I assume the district court dismissed it, but you're relying on 1981, which, of course, is quite unusual for this kind of case. So do you agree that Title VII is out of this case? To that point, I would, again, rely on our briefs to that point. No, answer my question. Don't give me this, our alarm, my brief stuff. We are moving under 1981. We are not relying on Title VII. Right. And so how do you still have a retaliation claim here? Well, and I think that we've demonstrated on, and with respect to the substance of the brief, we are not pursuing the retaliation claim. We are primarily focusing our briefing, and particularly this argument, on the age-related or the age discrimination claims. Right. Are you still pressing your claims under the Disability and Rehabilitation Act in 1981? Yes. With respect to the disability, yes, Your Honor. How about 1981? They urge you haven't adequately briefed it, and you devote about one page to it. And to that point, Your Honor, if the court feels that we didn't brief it substantially enough to keep the point or to convince the court that race discrimination is an issue that warrants summary judgment reversal, again, I would rely on our brief. I think that however lengthy it may be, there's enough there, and Mr. Williams raised the issue sufficiently below. But I would bring the court back to the fact that there is evidence in the record of race-related comments. And in particular, as I've mentioned a minute ago, with respect to the age discrimination claims. So I don't believe that the issue is waived, but I leave it to the court to determine whether or not there's sufficient information or evidence to support reversing summary judgment on race. But with respect to the age-related discrimination claim, there is sufficient evidence that a reasonable jury could infer that the basis for discrimination was pretextual, and therefore summary judgment was inappropriate. Well, your 1981 is barely a page. You cite some case law, then you say it's undisputed he's an African-American, therefore a member of a racial minority. The record is replete with examples where it's subjected to express verbal harassment. You don't list those for us. And he testified the comments made were denigrating and disrespectful to African-Americans. Accordingly, he's satisfied his burden of proving an issue of fact. That's your entire argument. Yes, Your Honor. That's right. Okay, your time has expired. And did you split time? Oh, no, you're going to do rebuttal. Rebuttal. Okay, I'm sorry. Ms. Mensah? Yes. Good morning. May it please the court, Jamila Mensah on behalf of Appalooie Waste Management of Texas, Inc., who was misidentified as Waste Management, Inc., but that issue is not for us to decide today. Ms. Mensah, the counsel opposite argues that below in the court, in the district court, Waste Management failed to make the argument that even if Waste Management was incorrectly believed that Williams didn't show up on the 22nd, they still genuinely believed that they might have had an incorrect belief. And the argument is that you didn't make that argument below, and so you can't rely on it here. What's your response? Our response, Your Honor, is that that was not actually a ground upon which summary judgment, that we moved for summary judgment. It was simply additional case law in support and in response to their allegation that he showed up to work. And so to back up a little bit procedurally, to clear up some representations, the Kronos form to which counsel refers was, in fact, included in the appendix that the Northern District requires us to submit with summary judgment. Mr. Williams included it in his summary judgment appendix. However, there was no citation to or reference or any effort to point the court to that piece of paper within the hundreds of pieces of paper that he submitted with his appendix, nor was there an argument specifically made by Mr. Williams in the lower court that the Kronos form was proof that he actually showed up to work on July 22nd. So when we did our response brief in this case before this court, the argument we were addressing is essentially for the first time that this Kronos report was evidence of him having shown up for work that day. So in response to that argument, in addition to all of the other reasons that we set forth, as to why summary judgment would nevertheless have been proper, we said even assuming for purposes of appeal that the court was wrong to find or to not waive Mr. Williams' argument that he showed up on the 22nd, that under the well-established law in this circuit, even a mistaken belief as to an employee's violation of a policy still doesn't mean that discrimination took place. And that kind of leads into the shifting explanations argument that counsel is making. But he's saying you didn't make that argument to the district court about mistaken belief. Yes, and our argument is that he didn't raise the Kronos report as evidence of his appearance at work in the lower court either. So that issue as a whole was addressed for the first time on appeal. But the whole reason that you terminated him was three consecutive days. Yes. And the Kronos form is your company's form, and it creates an issue of fact as to whether or not he showed up on the third day. Am I right to match straight and the district court don't even mention it? It wouldn't. Well, they don't mention it because— Because you only addressed it in a footnote, footnote six. Yes. Your Honor, if I may, the Kronos form, what Mr. Williams, both in his lower court briefing, but particularly in the appellate briefing, both the initial brief and the reply, what they are very careful to not allege is that Mr. Williams ever actually turned that form in to Waste Management, which would be the issue as to whether or not it is a genuine issue of material fact. He never asserts, never alleges that he filled out that form and submitted it to Waste Management. And if you look at it in the record, it's appellate record 1405. It shows that he filled it out and he signed it. But that isn't an argument you even made in the brief. That's not in footnote six. Yes, we do argue that there's no evidence that he provided that form to Waste Management or that Waste Management had any knowledge that he submitted that form. I think it's how we said it in the footnote. But what happens is—and they don't allege that either. They say that this form, he filled it out, and it's attached to his summary judgment record. If he had shown up on the third day, then the reason given to fire him would be very— And that's the other issue. There's a fundamental misunderstanding of the actual days on which Waste Management is relying to say that he didn't show up. The background of this is that his last day of actually working at Waste Management was June 28th of 2013. This thing went on for 36-some-odd days of them trying to work with him, his demands on whether he gets an automatic truck, his demands on being limited to an eight- to nine-hour workday. He was released by his doctor to return to work with no restrictions on June 28th of 2013. So there was, again, days and days and days of communication between Mr. Ramirez, Mr. Johnson, and others with Mr. Williams. On July 16th, he was directed to report to work on the 18th. On the 18th or the 19th, they called him back, or maybe even the 20th, because I believe the 20th was a weekend or the Friday before, and said, actually, we're directing you to report to work on the 22nd. So the actual first day officially that he was directed to return to work, or rather the last day he was directed to return to work, was the 22nd. The evidence in the record is undisputed that he did not, even assuming, let's assume that, to your point, that he did show up on the 22nd and there's no argument that Waste Management has that that form isn't valid, or even though we make those arguments below, he admits that he didn't show up or call anybody or submit any form or turn in anything on the 23rd, the 24th, or the 25th. Okay, so you're saying those are the relevant days. Correct. Because counsel told me that the relevant days were 20, 21, 22. Correct. And I think where the 20th comes from, where counsel probably gets the 20th from, is that that was the last communication that Mr. Williams had with anybody at Waste Management. So the actual termination didn't describe the three days? The termination date in the record is July 25th, which if you count back three days, he didn't show up on the 25th. But the notice of termination didn't specify the three. And there was no notice of termination. When you just said to me, oh, we did argue it was invalid, that form's not valid. So the district court and the magistrate's attention was brought to the form? When you said below. . . Oh, yes. So when he attached it to his summary judgment appendix, even though he didn't argue it in his brief, we filed a motion to strike it as unsubstantiated, you know, all the evidentiary arguments, in addition to some other evidence that we needed to strike. The judge, the district court, denied the motion to strike, but said that it was going to essentially consider everything and then ultimately come up with the findings. So while they didn't address it specifically and say, yes, we think this form counts for something or no, it doesn't, they ultimately found that he did not have sufficient evidence of pretext, which is where this case turns. And so it was not stricken from the record. Our argument now, again, in response to this having been raised on appeal for the first time, is that it wasn't properly, under the Fifth Circuit case law, it wasn't properly pointed out in the record to the district court. But there's no evidence that the district court ignored it, as they suggest, or didn't know that it existed or any other argument, particularly because we moved to strike, you know, other evidence. Just to understand. That wasn't there. Put waiver, failure to argue, just to forget that for purposes of this question. Is your argument that even assuming that Mr. Williams did show up on the 22nd as instructed, he still didn't show up on the 23rd or the 24th? Or the 25th. Or the 25th. Or the 26th. And so the fact issue as to the 22nd is not material. That's exactly right, Your Honor. And to that end, Mr. Williams, because the policy is undisputed, that no call, no show for three occurrences results in an administrative automatic termination. The system, you type in someone's not there for three days, it shuts it down. There's no notice that goes out. There was no acceptance of resignation or anything that would otherwise happen to formalize the termination of an employment relationship. Mr. Williams testified that, number one, he made no contact with waste management or anybody at waste management from July 20th to the time he filed his EEOC charge, I would say two years later, or later that year. More importantly, he testified, and this is in the record both in his own deposition and in his testimony before the Oklahoma Unemployment Commission, that he didn't even realize that he had been terminated from his employment until September of 2013. But he had not made any effort to contact or return to work or do anything to return to work from July 20th of 2013 to September of 2013. So if Mr. Williams actually believed he was still employed and had not done everything he was supposed to do to remain employed, then there's no explanation for the multitude of days, many, many more than three days, for him to be a no-call no-show. So to your point, Judge Duncan, yes, to the extent, even assuming, the actual 22nd arrival or not arrival, reporting or not reporting, is inconsequential to what ultimately was the issue in this case. And I think someone alluded to it earlier, whether the ultimate – assuming that our reason was false and that the real reason was discrimination. And I think it's important to point out that what Mr. Williams wants to do, specifically as it relates to the comments that he alleges from Mark Johnson, is to lower the burden of a plaintiff on summary judgment such that a summary judgment would become an impossibility. He wants – so the shifting burden responsibility is he has to make his prima facie case. Assuming he does that, we offer our legitimate reason, which we did here was a no-call no-show. He comes back, and now the courts have said that now he has to provide substantial evidence of pretext, that is that the reason is false and that the real reason was discrimination. He wants to relieve himself of that burden and say that the jury should decide whether the reason was false and the real reason was termination just based on some facts. Well, no, he's saying there's a genuine dispute of material facts, so it's a jury question. I don't believe he's taking the tact you're addressing. What is the evidence that he – would you respond to – my question was, even assuming the pretext, I think there still has to be evidence to permit the trier fact to conclude that the real reason for termination was age discrimination, and he points to comments. What's your response to that? Is that sufficient? No, and so the first response to that is that he already conceded through this argument that Mr. Johnson was not the decision-maker, so then he moves to that Mr. Johnson made these comments in front of the decision-maker and wants the court to infer just based on the fact that the decision-maker heard the comments that he – those comments had the necessary influence over the decision-maker to warrant a finding of discriminatory termination. He offers no evidence of that. There's no evidence of suggestion that just by virtue – and there's no cases that say just because a comment is made in front of a person who makes the decision that those comments influence the decision-maker sufficiently enough to satisfy the pretext burden in a case like this. And the cases cited by both sides go through multiple examples of comments that were made by people other than the decision-maker, and every time the court weighs those comments, the ultimate determination comes down to whether the comments themselves can be tied to the termination decision. Here, there was no discretion within – exercise within the decision to terminate Mr. Williams. He did not show up for work and did not call for a period of three days. There was no – and this, again, even assuming the 22nd, if you give the 22nd, there was no one had to – this is not a performance issue. This is not a disciplinary violation. This is not something that required people to sort of put their heads together and decide how to handle something. In this case, as a matter of fact that he admitted, he stopped contacting and stopped communicating with waste management altogether. The other point I want to make that undermines any argument that this Cronos report serves as evidence of pretext is what appellants did in their briefing was to tie testimony from Mr. Williams and from Mr. Johnson that a note was left. Mr. Williams at some point in this case claimed that he left and he showed up at work on the 22nd, sat there for – depending on which part of the record you're looking at, 45 minutes or three hours, and when Mr. Johnson didn't come out and somebody said he's not going to come out and talk to you, Mr. Williams testified that he left a note for Mr. Johnson and left. And so without going into the details of Mr. Williams' testimony about that note, appellants suggest in their brief that that note was in fact this Cronos report. But again, they don't actually allege that because the record doesn't support it. They just want you to infer perhaps that this is what happened. Mr. Williams' actual testimony was that he got a Post-it note, a sticky note, wrote Mr. Johnson, hey, I'm here, I'm out here, I don't have any tools, there's no truck for me, whatever, left it on his door or somewhere in his office and then went out and sat in his car for some period of time and then left. So even when asked directly what he did to let someone in supervision or management know that he was there on the 22nd, Mr. Williams testified unequivocally that all he did was leave a Post-it note that was or was not read by somebody at Waste Management. And the district court, again, having taken this testimony into consideration, found that there was no evidence sufficient to rebut the legitimate reason for Waste Management's decision to terminate, administratively terminate Mr. Williams' employment. Back to the issue of sort of who is the ultimate decision maker in the termination, as I understand our case law, correct me if I'm wrong, there has to be evidence from which a rational jury could find either that the person who made the comments, let's say Johnson, was primarily responsible for the challenged action, and so you're telling me no, it's Ramirez. Correct. Or someone who was influence or leverage over Ramirez. Correct. Is that an accurate statement of our law? That is an accurate statement of the law, especially because he's arguing the comments as a form of circumstantial evidence as opposed to direct evidence. As opposed to direct evidence, that's right. And so the argument was from the other side is that, well, the comments that we're talking about remain in the presence of Ramirez, and so a rational jury could find that there was influence or leverage. You may have said this already, but I just want to get it clear in my head. What's your response to that? The response is that there's no case law, and they cite to nothing that supports the proposition that just because a person hears a comment that may be discriminatory, that that automatically, by virtue of merely hearing it, it does have influence over the person's decision in here, in this case, enforcing the policy and terminating the point. But I thought the facts were saying that the human relations person, Ramirez, that fired him said, I depended on Johnson as direct supervisor, the person who in my presence made the aegis comments, to tell me that there was this automatic termination event. What Mr. Ramirez testified to is that he checked with Mr. Johnson each of those days before the termination to see whether or not Mr. Williams had reported to work. Mr. Johnson reported that he had no record of Mr. Williams reporting to work on 22nd, 23rd, 24th, or 25th. And then the termination was entered into the system on the 22nd. So if Johnson is wrong about the 22nd, he's described those as the three consecutive days, and Johnson's the one that actually has the motive to terminate him because of his age, wouldn't that fit under the case I'm thinking of as the Russell case? No, because of the dates. We still have three dates that have nothing to do with the 22nd. But Johnson said, here are the three that I'm telling you he didn't show for? No, that's not how it – no. I thought you just said that, counsel. No, I'm sorry. I said the 22nd, 23rd, 24th, and 25th. Four days. Okay. Four days. So the three that you're saying, regardless of the Cronus report, regardless – there were three days that – 22nd, okay. We'll hear it from counsel in a rebuttal argument about that. And another note regarding the pretext standard. So Mr. Williams relies pretty heavily on the Bienkowski opinion. And that case stands for the proposition that a district court should not deny summary judgment in the absence of controverting evidence raising a fact issue, but that is precisely what Mr. Williams has asked his court to do, I would offer, by virtue of the fact that even assuming – giving the actual deferential treatment of all of the facts in Mr. Williams' favor on summary judgment, as the court is required to do, even assuming all facts in his favor, the ultimate burden of proving discrimination has to – that burden always lies with Mr. Williams. And that proves for his ADEA claim as well as the other claims. And I want to use the last couple of minutes to address the other claims because, frankly, I'm not entirely sure what's left here. Walking in here today, I believe that the claims that were left for this court to decide were the ADEA discrimination claim, the ADA claim, discrimination, and then whether or not the failure to accommodate claim was still in there was hard to tell, and then the Section 1981 claims. So the ADEA claim, they spent some time on the issue of prima facie case. The district court found that he satisfied his prima facie case. Our argument is that even if he did – we argue that he didn't. One argument that we did raise below was that his failure to report to work – reporting to work is an essential function of the job under Munoz, and he failed to satisfy that. So that disqualifies him under all of the claims because he wasn't qualified to do the job. But even assuming the pretext argument stands for the ADEA case. For the disability claim, the district court found that he was not disabled because he pronounced that he was not disabled and deciding now that he is, in fact, disabled, he doesn't get to proclaim unilaterally that he satisfies the disability statement. But he could make the claim that the company regarded him as disabled, and they certainly would seem to have if they're the ones saying stop work, go get a medical evaluation. Well, they did, and all of that happened before he was released to return to work. So to the extent that they were concerned that he may have been disabled, that concern went away on June 28th when he was released without restrictions to return to work. From June 28th until his administrative termination on July 25th, nearly a month later, the evidence shows that they consistently worked with him to try to return him to work in his exact same position without any changes or any additional accommodations, and that's what the lower court used to find that there was no evidence that he was regarded as disabled, and the cases support that as well. And then on the failure to accommodate, if it's a regarded as argument, he's not entitled to an accommodation. That's as a matter of law under the ADEA. Only people with actual disabilities are entitled to accommodations under that statute. And then, of course, the argument that the Section 1981 claims have been waived in their entirety on a number of grounds, but even if they were not, he waived them by failing to address each independent ground on which summary judgment either could have been granted or was granted. Most importantly, dissimilarly situated, he was replaced by someone within his protected category and was not otherwise – no evidence of being otherwise discriminated against, and there's no evidence of protected activity that's protected by 1981, nor is there evidence of a causal connection between any alleged protected activity and his termination. So with that, we would ask that the court affirm the summary judgment on all accounts. Thank you, counsel. Good morning, Your Honors. Eric Chalishvili on behalf of Andrew Williams. I will address Judge Hankinson your question about this form and what the effect of the form is, but I just want to have the record clear. You're going to have to talk slowly, otherwise you're going to get told that by somebody else. Slow down a little bit. I just want to have the record clear. Counsel stated that Williams did not argue in his response to summary judgment that he was there and he did not cite to the form. So I urge the court to go to ROA 1308 where he clearly makes that argument and he cites to APP 156, which is the Kronos form, and the Kronos form is there. Now counsel is saying it wasn't July 22nd. It was July 23rd, July 24th, July 25th, all sorts of dates. Well, they judicially admitted in their briefs that the reason why he was fired was for a specific date. They can't change it now, and this just goes back to the shifting explanation. Where does it end? How many explanations do we have for his firing? Okay, I'm sorry. Again, you are speaking a little louder. At 1308, you will find what fact? At ROA 1308, you will find Mr. Williams stating that he was present at work on July 22nd and he cites to APP 156, which is the Kronos form. Right. But she's saying today it's undisputed that the 23rd, 24th, and 25th were no-call, no-shows. Right, and to that point, in their briefing, they stated that the reason they fired him was because he didn't show up on three consecutive days, and one of those days was July 22nd. Their briefing to Austrian District Court. Both throughout. Throughout. And now they're coming in and saying it was July 23rd, July 24th. They cannot do that. I mean, they judicially admitted certain dates. I mean, you can't just make up things and say, well, it was three other days. And the point to Judge Duncan's argument, this is not a waiver argument. Shifting explanations is not waiver. Shifting explanations is you said one reason. Now the jury can infer from the fact that you're changing your reason. My waiver point had to do with whether they made the argument that waste management was maybe wrong about the no-show on the 22nd, but the incorrect belief doesn't establish. Right. That's the one that I was asking. And so this incorrect belief, there's really a tension between these two doctrines that I believe this circuit could use guidance from this panel. Because on the one hand, you have a doctrine of shifting explanations, which says state your reasons to why you're firing this man, whatever they are. If there are ten reasons, state all ten of them. And then if you shift it later, especially in litigation, especially when there are lawyers involved, the jury couldn't – They didn't shift in the district court. You're saying they're arguing it today for the first time. That's right, Judge Boxnell. But that's not what the record was before the district court. And that's even worse because – Okay. Well, I think it's more of a waiver than a shifting explanation, but I thought counsel originally said this is a waiver. Well, I would say it's both, but I would like to focus the court's attention now on what – the cases talk about the shifting explanations. Sir, we're not retrying this on appeal. We're just looking at the summary judgment record as it existed. So to say now it's shifting explanations because they argued one thing in district court and one thing before us has no relevance to our review of a summary judgment. I understand your argument, but it's not relevant. We just are bound by the summary judgment record. So then as a – well, as a policy matter, what stops employers from giving a stated reason for terminating someone and then keeping in their back pocket this other reason of we had an incorrect belief? The employee has no chance to develop the record. Let's assume we stay focused on the 22nd as one of the three days. Okay. And if we do, you've pointed to the Kronos report, she and the ageist comments made by Johnson. Her primary argument towards the end is none of those comments can be attributed to the human relations fellow, Ramirez. And so I would point – so the best case we have on that, I would point the court to the Haas case. H-A-A-S. H-A-A-S and the G case. And in both those cases, the Fifth Circle is very clear that if you make comments in the vicinity of the ultimate decision maker, you cannot whitewash those comments by simply saying this wasn't the person that made the decision. Are you saying you don't need any other evidence of influence of the ultimate decision maker beyond the comments being made in the presence? Well, in this case, the comments were made by his direct supervisor. And Ramirez was relying on those comments because Ramirez was not the direct supervisor for Mr. Williams. So it wasn't just any comment. You're saying there's evidence that Ramirez was relying on the ageist comments. I mean, that's – I mean, that would be significant evidence, I would think. What I'm saying is the jury could infer from the record that he was relying on those comments because they were made in his vicinity. I understand. And Haas and G stand for the proposition. Haas is a proximity in time case primarily, right? Not an influence of. But they also discuss – and G certainly discusses those factors. And, of course, in this case, we also have – it was within two weeks of his termination. Yes. I think we have all those points. Thank you. Thank you, counsel.